Go to the next page. 4-18-0626 Ken Osmoe v. The Workers' Compensation Commission Counsel, you may proceed. May it please the court, Mr. Wolfman and Bruce Sorensen, Ken Osmoe. Initially I want to say that at age 72 I looked at these cases and I wonder if the case is becoming more simple or if I am. This particular case, I believe it's simple. You know how I do. I wrote three or four arguments that I put in this thing for you to get me off track. We don't do that intentionally, Your Honor. It's a good thing. I've learned to be like that basketball player who can't hit it unless somebody's pushing him. So I'm going to put this aside and today I'm going to try to do yellow catalogs. I don't know if it will work, but we'll find out. And because of the nature of this court case, there are two bookend legal errors which I think require a remand. And they're simply stated. The first one is that the first paragraph in the conclusion of the law say that the petitioner did not sustain an occupational disease arising out of an important response that manifested itself on August 28, 2007. That's just simply not the law. If he has to manifest by a certain date, it would be two years after that, with section one out. If they believe Freeman's experts that he didn't have CWP at all, what difference would it make that they put that date in? If he didn't have it at all, he obviously didn't have it on that date either. And second of all, in the second page of the arbitrator's decision itself, it doesn't qualify it with that date. He said he did not have an occupational disease arising out of an important response. Well, the difficulty is there's no way to peer into the mind of the fire of law and fact except through what they write. Well, except for one problem. We don't have to peer into their mind because they specifically said that they credited Freeman's experts and found them persuasive and they credited them above your experts. And the distinction between the two is your experts said he had it and their experts said he didn't. So, what difference does the date make? Well, if a person gets started down the wrong road, you don't know whether and how much their misunderstanding of the law affects that way of process that they make. And that's why I said you can't peer into their mind and know. A commission or an arbitrator who starts this far off course, and this is significantly off course, what else were they off course on? We know one thing for sure. They started this off the wrong direction from the Washington. Let me ask you a fundamental question I'm curious about. Did you make this argument either before the commission or the circuit court? I think the answer is no, you did not. It's not in your statement of exceptions. And I find no record of it before the commission. If it's not raised before the commission, of course, there's an argument. I'll have to take what you say at face value. It's still true. The second bookend of a legal error is that there was no decision on asthma. There were three diseases. CWT, chronic myocarditis, and asthma. And they didn't address asthma whatsoever. Now, one might say, yeah, but see in the first paragraph, they say there's no disease. Why? Their actions after they wrote that first paragraph say, no, they need to write about each disease. They wrote about CWT. They wrote about chronic myocarditis. Then they left asthma out. Why do they have to write about it? Were there cases that suggest they have to write about each disease? What case would say that? This case. Well, no, I mean, are there any published cases that say they have to do it? Number one, I don't know whether there are or not, but my argument rests on this case. What did this commission consider important to write about? Do you know that? Because that's that introductory paragraph. They wrote about CWT. They wrote about chronic myocarditis. And they simply left that out. It's not mentioned anywhere. And it's critical. Because any one of these diseases will change the denial into a law. And the claim here deserves to know what it taught about that. So, you know, in my opinion, for either or both of those reasons, it's worthy of a remand. And I'm going to revisit the reasons so important in a minute. But I'll say a couple things about the chronic myocarditis and the CWT. To start with on the chronic myocarditis, the commission spent its time talking about whether these PFTs were obstructive or restrictive. But the problem is that's completely irrelevant for chronic myocarditis. Chronic myocarditis is determined by frequency of cough and sputum. And you can have chronic myocarditis with normal PFTs. So all of that cough tells you, hey, you're off on the wrong direction. I don't know why they're talking about this, but it doesn't have anything to do with the disease. It's just the disease they're talking about. Second thing is, when you're talking about obstruction or restriction, 20 years ago, 25 years ago when I stamped here, that was thought to be important by the medical community, by the authorities that we have to live under, and by the courts. But it's simply not anymore, particularly with the introduction of the AMA guide to safe addiction. What's important is, is there an impairment in the FBCD in the AMA, or is there an impairment in the FBB1, the FTA? And those are the two things that are on Table 5.4 of the Pulmonary Dysfunction Table in the AMA guides. And the reason that's important is you could have an obstruction or a restriction with impairments in both those cases because of two diseases. So when the commission is spending its time talking about obstruction or restriction, it's telling you, we're off on the wrong path. Now, there's another problem with chronic myocarditis. The commission said, we believe there isn't any chronic myocarditis-related work because in the year after he left work, he didn't have any cough. And they based that on Dr. Selby. The problem is, Dr. Selby proved that was wrong later when he cited Dr. Mather's records to say that there was a visit for cough in December of 2007. So that's one reason they're wrong. Then Dr. Selby also said why there could be an empty spot in the records on cough when he left the mine. He said, well, you know, it could be that he remembers the cough in his myocarditis going into that dust every day. Then he got out of it. Probably was taking it easy that first year out, and he didn't think about it. But then he started to observe himself more. He starts to get the cough. He remembers it. And so it doesn't mean he didn't have it during the meantime. It just means he wasn't doing the thing that would make it show up. Now, what's important about that is, Selby's the one they listened to to say there was no cough during that one-year period. That's based on Dr. Tadbett's case history. Selby's also the guy that says that's not true. There was cough in that period, number one. And number two is quite logical, his explanation. Now, another thing that's important is in that discussion that Dr. Selby has in his deposition, at that visit of December of 2007 that proved there was cough during that year, the diagnosis of Dr. Mather was upper respiratory infection and bronchitis. So the question is, is bronchitis the same thing as chronic bronchitis? Did he find chronic bronchitis then? And Dr. Selby answered that, too. Why not? He says a lot of doctors put bronchitis when they need chronic bronchitis. So he answered that question. He strengthened the diagnosis of chronic bronchitis. Those are my comments on chronic bronchitis. Now, the next, I guess I want to add this. It's an irreconcilable concept because the commission relied on Dr. Selby. Dr. Selby proved that his reason for visiting those chronic bronchitis was wrong. There was cough during that period. Only in that phrase. What's the date of Mather's records that says there was a cough? December of 2007, I believe. December or February. At any rate, what did it say in the records about a cough? It said he had a cough. I think it's a long-week duration. The assessment was proper respiratory infection and bronchitis. And what did Selby find that he didn't complain? Is that correct? Well, what Dr. Selby did, you know, I'm not even criticizing him. He's answering his questions for an employer, and he says, Dr. Tazda says there was a year where there was no cough. Going back to Dr. Tazda, the general cross-examination, he was honest, and I asked him, and he pointed out where that entry was. He said a week's cough. He also said that the diagnosis of bronchitis could very well be chronic bronchitis because treaters do that in their records. So you're saying in so many words that Selby's foundation for his opinion was somehow flawed because it was based on a misinterpretation of the evidence? Is that sort of what you're saying? Yes. I'm saying that this decision on chronic bronchitis is one where there's an irreconcilable conflict in the doctor, Dr. Selby, that the commission relied on. And the preponderance of what he said was in favor of my client. He not only said that there was cough during that period where there was supposed to be no cough, but he said why he might not have complained about it. And he did say that bronchitis could be chronic bronchitis, which is what we're asking about, within that period. So he did all that against just his direct examination answer that, well, Dr. Tavares said he didn't have any cough within that period, so it couldn't be from coma. And then he impeached himself. Well, Tavares actually said that the complainant related a history of cough with sputum production that ended at the time that he left the mine. That's what Tavares said in his deposition. Yes. And Selby relied on that and said if it stopped after he left the mine, it never returned until he'd been gone for a year. That means he didn't have it when he left. This is what Dr. Selby said. Dr. Selby brought up caspase and relied on caspase to say there wasn't any cough in here. And the same Dr. Selby said, but in Dr. Mather's reference, the treatment, there was cough in there. You're missing what I'm saying. Taslas testified that it was the complainant that testified, told him related a history of cough that ended at the time that he left the mine and did not return until after he'd been gone for a year. It's funny. If you say that to me, I'm reminded of me. I'm always saying that to you in this way. What the commission believed here was not caspase. The commission believed Selby. But Selby rested it on Taslas' testimony that the claimant related it to him. Gave a history. So Mather's record says one thing, and Taslas said, but the claimant told me something else. And the difference is, caspase examined him once, back here, and Mather treated him the whole time. It's not a question of treating. It's a question of the complainant told him that. You know what? I think that I can answer that without criticizing what you're saying. I believe that the answer is that the commission relied on Selby. The commission didn't rely on Caspase, didn't rely on him, but it relied on Selby for what? That there was no cough in the year. And Selby's the guy who said that there was cough during the year. The assessment at that time included bronchitis, which would be chronic bronchitis. Now, I have to ask you about something in your brief, which I found quite interesting. You cited an out-of-jurisdiction case that said, we shouldn't rely too much on deregions. Is that correct? It's in there, but it's not what I'm discussing. Well, except for one thing. Half your brief relies on deregions. I mean, you made the argument and said that in res silica products stands for the proposition that we shouldn't rely on deregions. And throughout your entire brief, you rely on deregions. Well, in the brief, as you write the brief, you bet your chance to put everything down. When it comes to this argument, you steal it. You say, you know, that's an interesting argument. That's not going to work. This is an interesting argument. But he gets an answer that's waiting, and you're not going to turn that around. And you start dropping things off the table. The problem with CWP is not that. I'm yielding that today. The problem with CWP, and I want to be sure my arguments on chronic bronchitis and CWP that are falling on deaf ears don't get in the way of my legal arguments. That first paragraph and the figure that I have. That's what really this case is about. But as far as CWP, one of the arguments in here is that it's in the upper zones. That's what the commission talks about. It's in the upper zones. It should start in the upper zones, but Smith found it in the lower zones first. So the problem there is they say generally starts in the upper zones. But what's generally mean? The truth is, Dr. Wyatt said across the commission, it tends to start in the upper zones. And Dr. Meyer said that there is no document that says it must start in the upper zones. So generally, what does that mean? Is this guy in the general CWP, or is he in the not general CWP? So that is not what determines whether this guy has CWP. But on CWP, the most important thing, and this is kind of a legal matter, is the weighing process. There are two view readers who said he's got CWP. Against what? The other two view readers who said that notwithstanding their negative reading, he could still have it. And nobody in Shredder said he cannot have CWP. You made this argument the last time we were here, and you seem to ignore the fact that if your view readers say he's got it, and these films show that he has it, and their view readers say these films are negative, that calls into question the opinions of your view readers. And it doesn't mean he didn't have it. No, it didn't. But it takes away from you the testimony that he has it, based upon their reading of these films. And clearly the commission relied upon Freeman's witnesses. Now, after everything that you said, which is true, I believe it has to come down to what did the witnesses say about their readings. The two that say they're positive, they say they're positive. What's it weighed against? Two guys say, yeah, it's not negative, but it doesn't mean he doesn't have it. And they also said that the films were bad for several reasons. One, that he was in the wrong position. The other one, that he was underexposed. They said that the films are no good. And, by the way, what is on the films is negative. So it calls into question the opinions of your witnesses, and the commission says they relied on their witnesses. Now, that brings us to the next step. You properly outlined it, but the last step in the analysis is, now what does that mean? It means you didn't prove he had CWP, is what it means. What it means is I've got evidence out there that there's CWP, and most importantly, when you weigh it, there is no evidence. Wait a minute, wait a minute. What evidence do you have that they have CWP if their readers say your B readers are wrong? What evidence do you have if they don't believe your B readers? First of all, you've got to look at one thing. Why did they say it's wrong? You talked about that upper zone and lower zone thing. Now, I'm not going to get into talking about that anymore today. Counsel, you will have time on the reply. Thanks, everyone. Counsel, you may respond. Okay, please report. My name is Ken Gortz, and I represent the appellee. The commission here found the opinion of Dr. Selby and Eisenmeier to be more persuasive. The standup review is manifestly that there's sufficient evidence in the record to support the commission's denial of this claim. In regard to pneumoconiosis, Dr. Selby, Wyatt, and Eisenmeier found that there was no pneumoconiosis. Dr. Castle did likewise. The commission didn't mention Dr. Castle, but this opinion is important. In regard to asthma, Dr. Selby testified he didn't have asthma. That's at pages 269 to 272 of the record. So asthma was addressed by Dr. Selby. His opinion was given greater weight. In regard to this issue about chronic bronchitis, Mr. Besore was citing an instance in the medical clerical notes that complained of a cough in the diagnosis of bronchitis. It wasn't the diagnosis of chronic bronchitis, a permanent condition. In the record, Dr. Mathers said that's the primary care doctor. I took him through each of his office visits. On August 7, 2012, which is almost five years after this gentleman was last in the mine, I asked him, as of that date, have you diagnosed this gentleman with chronic bronchitis or asthma? And he said asthma. So chronic bronchitis is not the same thing as bronchitis. Bronchitis is a temporary condition. We're talking about a permanent condition. We're talking about a permanent condition. Dr. Mathers was diagnosed with chronic bronchitis five years after he was last in the mine. And just as cough and nucleic acid. What I asked Dr. Selby, I was taking from what was claimed that had told Dr. Taspass about this cough. And he said that's not uncommon for home miners to cough and have black skin. But that it is. And so then the question becomes, okay, it starts again later. Whether it's chronic bronchitis or not, if it's just cough, it's not chronic bronchitis, because there's no skin. But if it starts later, can you relate that back a year back to when he was at the mine? And the commission relied upon that, so I think there's sufficient evidence. What about this date that they put in there, failed to manifest by August 28, 2007? Oh, I agree with your comments, and we addressed that in our brief. I don't think it's of any importance. They found that he did not have the disease. And if you look at the films that were being read here, they're a year-and-a-half to five-and-a-half years after this gentleman was last at the mine. I mean, the earliest film we had that they looked for pneumoconiosis was a year-and-a-half after that manifestation. I think it's clear that they found the opinion of Selby, Wyatt, and Meyer regarding those films a year-and-a-half, five-and-a-half years later to be negative. Was there any evidence or testimony that it could be related back to that period of time, that cough, due to bronchitis, chronic bronchitis? You know, I don't think, actually, that's the disorder that went into that with Dr. Paul. I would think you'd have to look to Dr. Paul. See, it wasn't Dr. Manners that made that key affirmation. He said that there was no cough or fever, there was no chronic bronchitis. Diagnosis, and he was the treater. He was the treater. Yeah, he's the one that had the strongest contact history. And there is credibility. But there's no contra or evidence to that relation back, that there is no relation. I think Dr. Kaspas said that he had chronic bronchitis. It was something that Dr. Paul, he was at the moment that that had ended. Not that I can recall, Your Honor, and I don't remember seeing it. I don't have anything for you. Thank you, Counsel. Counsel, you may reply. Mr. Wirtz made arguments about asthma from the record. But that's not what we're here for. We're here to talk about what the commission wanted. And there is no comment about asthma in their conclusions at all. I don't know if it makes any difference, Dr. Faulkner, but you asked if we had brought up the first paragraph of the precludes law. And earlier, the employer didn't object to it when it came up here. So, then the next thing is, in this, the first thing I want to say is that the two main things my argument rests on are matters of law. The CWP, the chronic bronchitis study is interesting. I think we should win on that. But that's not the big deal. The big deal is they were wrong about what the law was when they started. And they were wrong to leave asthma out, which is a potential disease. Can I ask you a question? Sure. On this date, Petitioner did not sustain an occupational disease that rose out of it in the course of his employment. Does that include asthma? You know it does, Mr. Wirtz. I'm sorry, I didn't hear you. On this date, Petitioner did not sustain an occupational disease that rose out of it in the course of his employment. Does that include asthma? If what you're saying rules, then what the commission should have done is they didn't look at the paragraph and quit. But they didn't. Because they thought it was important. The disease is a great question. It should be addressed. And they addressed, for a full paragraph, bronchitis. And for more than a full paragraph, CWP. They forgot. Yes. Except they also stated, the arbitrator finds the opinions of Selby, Wyatt, and Meyer to be more persuasive and credible than those of Paul, Taslett, Smith, and Alexander. And that is under the paragraph in support of the conclusion that he didn't sustain an occupational disease. In support of this conclusion, the arbitrator notes the following. Page 12 of the arbitrator's decision. It has a paragraph, another paragraph, then it has a third paragraph. The arbitrator finds that the opinions of Selby, Wyatt, and Meyer more persuasive. Then it goes on to another finding, that they didn't find them credible. But the finding, the opinions of Freeman's experts more persuasive, is listed in support of the conclusion that he did not suffer from an occupational disease. And what disease are they talking about there? CWP. No. That's an assumption. That's your assumption. No, they can't be talking about asthma because those are view readers. Asthma doesn't show up on an x-ray. Asthma shows up on pulmonary function testing. Who testified that he didn't have asthma? Who testified to that? That he did not have asthma? Well, I mean, is that where we're going now? I think that's reweighting the evidence. My point is not what's in the evidence. That's for the commission to come back and tell us when it's revamped. Our function is to determine whether there is any evidence in the record to support the commission's decision. If the answer to that is yes, then it's not against the manifesto. Just that simple. If the commission didn't make a decision, how can there be evidence supporting or not supporting it? We're going back and forth on this point. We're playing ping pong now. Well, here's the question I want to ask. Do you have any specific cases or legal precedent that you can draw our attention to that says the commission is obligated to delineate its reasoning and how they weigh the evidence on these different diseases? Are they required legally to do that? My argument is based solely on what they did here. They set the pattern, which is we say, we're defining disease. Everybody can tell you what those diseases were, and they recognize them except for one thing. They left out a major one. It's just as important as chronic bronchitis or CWD. It's compensable. They forgot. Or else, if they were consistent with your argument, which is one way to do it, they write that paragraph and they just quit, because that means there wasn't any CWD. But is the failure to do that fatal? Do you have cases that say the failure to do what you are saying they should have done is fatal? My argument is not that they didn't perform according to other cases. My argument is like the law of the case. They didn't perform within themselves. They showed you what they considered important. They had that paragraph. They talked about CWD. That's important. It's a disease. They talked about chronic bronchitis. That's important. That's a disease. They forgot to talk about it. They told you how they're going to write this up. And they do it different ways. The commission will have different formats for each one of us. And I'm trying to say that they set the rules for this. I got away with those rules. They left that in place. Thank you. Okay. Thank you, counsel. Thank you, counsel, both, for your arguments on this matter. We'll be taking it under advisement. We're in this position, shall I say.